Troutman Pepper Hamilton Sanders LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08540

troutman.com



Angelo A. Stio III
angelo.stio@troutman.com
Direct Dial:  609-951-4125

April 17, 2024

**VIA ECF**

Honorable Harvey J. Bartle III, U.S.D.J.
United States District Court for the
   Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re:  Daniel's Law Cases

Dear Judge Bartle:

       This firm represents ten Defendants in the Daniel's Law cases[1] that have been assigned to the Court and are the subject of the Case Management Conference scheduled for Thursday, April 18, 2024 at 10:00 a.m. (the "CMC").  We have conferred with counsel for the following entities who are Defendants in cases assigned to the Court and who also join in this letter: Accurate Append; Black Knight Inc.; Black Knight IP Holding Company, LLC; Black Knight Technologies, LLC; Choreograph LLC; Claritas, LLC; Data Axle, Inc.; GoHunt Management Holdings; GoHunt

---

[1] Troutman Pepper represents Defendants in the following matters:

- *Atlas Data Privacy Corp., et al v. Acxiom LLC, et al*, (No. 1:24-cv-4107);
- *Atlas Data Privacy Corp., et al v. AtData, LLC, et al*, (No. 1:24-cv-4447);
- *Atlas Data Privacy Corp., et al v. Carco Group Inc., Intellicorp Records, Inc., et al*, (No. 1:24-cv-4077);
- *Atlas Data Privacy Corp., et al v. Deluxe Corp., et al*, (No. 1:24-cv-4080);
- *Atlas Data Privacy Corp., et al v. DM Group, Inc., et al*, (No. 1:24-cv-4075);
- *Atlas Data Privacy Corp., et al v. Enformion, LLC, Enformion Holdco, Inc., et al*, (No. 1:24-cv-4110);
- *Atlas Data Privacy Corp., et al v. Red Violet, Inc., et al*, (No. 1:24-cv-4113);
- *Atlas Data Privacy Corp., et al v. Remine Inc., et al*, (No. 1:24-cv-4182);
- *Atlas Data Privacy Corp., et al v. RocketReach LLC, et al*, (No. 1:24-cv-4664);
- *Atlas Data Privacy Corp., et al v. CoreLogic, Inc., et al*, (No. 1:24-cv-4230).

Honorable Harvey J. Bartle III, U.S.D.J
April 17, 2024
Page 2



Management Holdings, LLC; GoHunt Management Holdings II, LLC; Infomatics LLC; Innovis Data Solutions, Inc.; Labels & Lists, Inc.; Lusha Systems Inc.; Melissa Data Corp.; MyHeritage Ltd. and MyHeritage (USA), Inc.; Quantarium Group, LLC; Quantarium Alliance; Restoration of America, Voter Reference Foundation LLC; Teltech Systems, Inc.; Epic Enterprises, LLC; The People Searchers, LLC; TransUnion LLC; Neuster, Inc.; TransUnion Risk and Alternative Data Solutions; We Inform, LLC; Yardi Systems, Inc.; Zillow, Inc.; and Zillow Group, Inc.

The Defendants participating in this letter (the "Signatory Defendants") will be represented at the CMC and ready to discuss the issues identified in the Court's April 8, 2024 Order (was well as other Defendants in Daniel's Law cases assigned to the Court). Through this letter, the Signatory Defendants also propose a structure for resolving certain threshold issues related to jurisdiction, removal and other pleading issues that are applicable to most of the cases before the Court and which could be subject to coordinated proceedings to achieve efficiencies.

We have reached out to Plaintiffs' counsel to discuss material elements of this structure, including whether Plaintiffs intend to file motions to remand, Plaintiffs' position on subject matter jurisdiction, a motion for a protective order related to Atlas Data Privacy Corporation's ("Atlas") assignment, and a meet and confer to set deadlines, as provided below. Plaintiffs' counsel indicated they would speak with their client and get back to us. We also advised Plaintiffs' counsel we would be submitting a letter to the Court suggesting an approach for resolution of threshold issues in advance of the CMC. Plaintiffs' counsel advised they would object to any submission.

As a preliminary matter, and before taking any other action, the Signatory Defendants request that the Court determine whether: (a) additional cases have been filed (or will be filed) in state court that may still be removed to federal court; (b) Plaintiffs intend to file motions to remand; and (c) there is any factual information the Court needs to conclude that it has subject matter jurisdiction. The Signatory Defendants believe it is important that the full scope of the litigation, and any potential disputes over jurisdiction, be addressed at the outset before launching head-first into other issues. For these reasons, the Signatory Defendants respectfully submit that it is premature to assess whether identification of "bellwether" cases—or, alternatively, sequenced discovery and litigation of key issues that will drive resolution of these matters—given the potential for other removed cases and the uncertainty on whether Plaintiffs intend to move to remand.

Plaintiffs, as evidenced by their April 8 letter to the Court, do not appear to share the same belief about addressing threshold issues at the outset. Plaintiffs argue that Defendants are not in compliance with Daniel's Law and appear to suggest that any delay will endanger the safety of public servants and their families.[2] Plaintiffs' position about urgency, however, is belied by their conduct.

---

[2] Defendants dispute the contention that they did not apply with Daniel's Law.

Honorable Harvey J. Bartle III, U.S.D.J
April 17, 2024
Page 3



It is clear from the complaints, that Atlas collected information from purportedly "Covered Persons" over time, waited until it had aggregated nearly nineteen thousand requests from the purportedly "Covered Persons" (thereby delaying the requests of many individuals), and then bombarded each Defendant with thousands of automated email out-opt requests from an @AtlasMail.com email domain over a brief period of time, and in some instances during the holiday season. The factual allegations in the complaints and the conduct by Atlas suggest a calculated plan designed to make it impracticable or impossible to execute on the opt-out requests within ten business days of receipt, which is the deadline the statute provides for a validly submitted request (which these were not). In many cases, email servers treated the automated emails that Atlas generated as a malicious attack, resulting in a blocking or quarantining of the emails.

The conduct of Atlas and its counsel after the initial emails were sent likewise appears to have been calculated to thwart Defendants' efforts to execute on the opt-out requests. Some Defendants received the email opt-out requests and, in an effort to respond, requested additional information to verify or clarify the personally identifying information in question. These requests for further information were ignored. Some Defendants, based on their unique circumstances, were able to fully suppress the information contained in the requests. Other Defendants, however, never received the opt-out requests, and still others needed, and asked Atlas's counsel for, a list of the purported assignees and their identifying information. Atlas's counsel ignored these requests too.

Importantly, there are multiple Defendants in these cases with disparate business models and varying legal and factual defenses.[3] Plaintiffs nonetheless have utilized a boilerplate complaint that asserts the same claims, all of which arise from Atlas's mass email campaign. In this regard, the cases before the Court are essentially the inverse of a traditional multidistrict litigation ("MDL") involving the conduct of a single plaintiff (Atlas) and asserting claims against many differently situated Defendants. Because the Plaintiffs' claims arise in large part from Atlas's conduct, the Defendants expect that much of the discovery in these cases will focus on Atlas rather than Defendants. Indeed, there is no reason why Plaintiffs should not produce information related to Atlas's purported assignments, the opt-out email requests that were allegedly sent from the @AtlasMail email domain, and the Jane Doe Plaintiffs, all of which bear on the Court's subject matter jurisdiction.

In the event that Plaintiffs intend to move for remand, or the Court determines it needs to review subject matter jurisdiction, the Signatory Defendants propose the following initial schedule to facilitate resolution of these threshold issues:

---

[3] Indeed, the Defendants targeted by Atlas include not just people search companies, but also business to business digital marketing companies, cloud software companies, credit reporting agencies, real estate technology platforms, sales and recruiting platforms, and political action committees, to name a few. Over a dozen industries are represented by the removed Defendants.

Honorable Harvey J. Bartle III, U.S.D.J
April 17, 2024
Page 4



1.  Plaintiffs' counsel shall by April 26, 2024 disclose whether they anticipate filing new cases and report the status of service of complaints for all presently filed cases.

2.  Plaintiffs' counsel shall produce to Defendants' counsel copies of all documents effecting the assignments that Atlas allegedly obtained from the purported Covered Persons by April 26, 2024.

3.  Within twenty (20) days of receipt of an email from a Defendant, Plaintiffs' counsel shall provide to any Defendant who requests it, a single file (in Excel or another usable format) that identifies the named Plaintiffs, the Jane Does and all purported Covered Persons who allegedly assigned claims to Atlas and who are implicated in the Complaint against that Defendant. The file shall include all identifying information (e.g., address, phone numbers, email addresses, etc.) that Atlas possesses and all identifying information that these individuals claimed to seek to have requested be suppressed or redacted by the Defendant. All Parties shall treat the file as confidential and shall use it only for purposes of the litigation.

4.  Any motion for a protective order related to the assignments that Atlas claims it received from the purported Covered Persons shall be filed by Plaintiffs (or jointly) by May 10, 2024.[4]

5.  Counsel for Plaintiffs and each Defendant shall meet and confer and shall submit a joint letter to the Court on or before May 10, 2024 outlining: (a) a proposed briefing schedule for any timely-filed motions to remand; (b) a proposal for production of documents and other discovery related to the purported assignments, the identities of the purported Covered Persons, and alleged redaction/suppression requests Atlas generated; (c) a proposed briefing schedule for the filing of any Rule 12(b) motions; (d) the ability for all or certain Defendants to file consolidated briefing in support of any dispositive motions; (e) the Parties' respective positions on sequencing of the litigation after resolution of threshold motions under Rule 12, including whether the Court can

---

[4] Atlas produced to four Defendants a template Terms of Service, which contains the language of the alleged assignments referenced in the complaints. This production was made on the condition that the four Defendants agree to treat the template Terms of Service as confidential pending the Court ruling on a motion for a protective order. For this reason, four Defendants filed the Terms of Service under seal with their removal papers. *See Atlas Data Privacy Corp., et al v. Enformion, LLC, et al.* (No. 2:24-cv-04110); *Atlas Data Privacy Corp., et al v. Red Violet, Inc., et al.*, (No. 3:24-cv-041130); *Atlas Data Privacy Corp., et al v. Acxiom, LLC, et al.* (No. 3:24-cv-4107); *Atlas Data Privacy Corp., et al v. Carco Group, Inc., et al.,* (No. 1:24-cv-4077). The four Defendants in the referenced cases do not believe that the Terms of Service—allegedly signed by some 19,000 purported Covered Persons and which form the basis for Atlas's allegations in the Complaints—are confidential. Accordingly, Atlas should promptly move for a protective order if it continues to assert that the Terms of Service are confidential.

170499497v10

Honorable Harvey J. Bartle III, U.S.D.J
April 17, 2024
Page 5



resolve any bellwether cases or bellwether issues that will result in narrowing of the issue and/or facilitate resolution of these cases; (f) a proposed schedule for regular monthly case management conferences; and (g) any agreement on the entry of a Confidentiality Order to govern discovery in these cases.

6. The Court shall hold a Case Management Conference on May ___, 2024 at ____ to discuss the issues in paragraph 5 and to establish schedules for the filing of jurisdictional motions, motions to dismiss, and for limited discovery related to any motions.

7. The stay of all other proceedings and deadlines in the Daniel's Law cases shall continue until May ___, 2024 at _____.

\*      \*      \*

Finally, given the number of Defendants in the cases assigned to the Court and the limited courtroom capacity, the Signatory Defendants respectfully request that the Court (a) establish a call-in number or remote access for those attorneys who wish to observe the CMC virtually or by phone; and (b) permit each party to designate an attorney or attorneys to appear at the conference without the presence of local New Jersey counsel.  If the Court prefers that the defendants file a formal motion in connection with the foregoing requests, the Signatory Defendants will promptly do so upon the Court's instruction.

We look forward to speaking with Your Honor on April 18, 2024.

Respectfully,

Angelo A. Stio III

Cc: All counsel of record in cases outlined in footnote 1 (Via ECF)

170499497v10